IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                    3:05cr119/MCR
                                                       3:07cv173/MCR/MD

ANA ENCINA

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 41).  The government has filed a response (doc. 48) and the defendant has not filed a reply despite having been afforded time in which to do so.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

## I.  BACKGROUND

On October 6, 2006, defendant was a passenger in a vehicle driven by Maria Delrefugio Encinia that was stopped in Santa Rosa County while heading eastbound on I-10.  Trooper B.O. Davis, the officer initiating the stop, indicated that although the driver spoke no English, the defendant "spoke good English."  (Doc. 48, exh. 1 at 1).  When his canine alerted on the vehicle, he conducted a search and located approximately six (6) kilograms of cocaine hydrochloride inside the dashboard.  (*Id.*)  Defendant was arrested

and read her *Miranda* rights, which she indicated she understood.  (*Id.*).  She also signed an FDLE form, written in English, that explained her constitutional rights.  (*Id.*).

According to the PSR, defendant was interviewed by Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agents Lawson and Saier.   During the interview, the defendant stated she was hired by an Hispanic male, identified only as "Pochas," to drive the Crown Victoria from Brownsville, Texas, to Homestead, Florida. The defendant stated she knew the vehicle contained cocaine, however, she claimed she did not know the exact quantity of the cocaine or where it was hidden in the vehicle. (PSR ¶ 11, 13).

As a result of this traffic stop, defendant was charged in a two count indictment with conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of Title 21 U.S.C. § 841(b)(1)(A)(ii), and possession with intent to distribute 5 kilograms or more of cocaine on a date certain. (Doc. 1).  Defendant filed a motion to suppress (doc. 13) which was denied after a hearing and response from the government (doc. 17, 18, 20, 22).  The case was referred to the undersigned for a change of plea hearing.  (Doc. 23, 24 & 25).  A written plea and cooperation agreement was filed under seal (doc. 26).  After a hearing, the undersigned recommended that the defendant's plea of guilty be accepted (doc. 27) and it was.  (Doc. 30).

The probation officer prepared a PSR, calculating that defendant's base offense level was 32 based on the quantity of drugs seized during the traffic stop.  Defendant met the criteria set forth in Guidelines § 5C1.2 (Safety Valve), therefore, § 2D1.1(b)(7) was applied and her offense level was decreased by two.   She received a three level adjustment for acceptance of responsibility, for a total offense level of 27.   She had a criminal history category of I.  The statutory minimum mandatory was 120 months, and the applicable guidelines range, after application of the safety valve, was 70 to 87 months.  Defense counsel filed an objection arguing that the defendant should be considered a "minor participant" under § 3B1.2(b) of the Sentencing Guidelines which would result in a two-level decrease in the offense level, and an additional two-level decrease in the offense level pursuant to § 2D1.1(a)(3), and a guideline imprisonment range of 46 to 57 months.

The court heard the parties' arguments on counsel's objection and overruled it at sentencing.  (Doc. 44 at 7-9).  Counsel argued for leniency in sentencing, and the court sentenced defendant at the lowest end of the applicable Guidelines range to a term of 70 months imprisonment on counts one and two to be served concurrently, followed by a five year term of supervised release and a special monetary assessment of $200.00.  (Doc. 37).  She did not appeal, and the instant motion to vacate was docketed on April 19, 2007. (Doc. 41).

In the present motion, defendant separates her claims into four grounds for relief. She contends that she did not understand the laws of the United States, that counsel was constitutionally ineffective, that there was a "language barrier," and that there was sentencing error.  The government opposes the motion in its entirety.

## II.  LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently

results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *Ferguson v. United States,* 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *See Bousley v. United States,* 118 S.Ct. 1604, 1610 (1998); *United States v. Montano,* 398 F.3d 1276 (11th Cir. 2004); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994)(recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error or that he is "actually innocent." *Bousley,* 118 S.Ct. at 1611 (citations omitted); *United States v. Montano,* 398 F.3d 1276 (11th Cir. 2004). In the alternative, a defendant can overcome the procedural bar created by the failure to appeal if he could show a fundamental miscarriage of justice. *Montano*, 398 F.3d at 1280 (citing *Mills*, 36

F.3d at 1055 (quoting *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986))).

Defendant's first three claims for relief appear to be interrelated.  First she claims that she did not understand United States laws.  She states that since this was her first arrest, she was "not aware and ignorant to the laws of the United States."  This appears to be the proverbial situation where "ignorance of the law is no excuse."  Defendant stated in the PSR that she agreed to transport a vehicle containing a hidden stash of an unknown quantity of cocaine in exchange for $3,000.  She cannot now be heard to say that she should not have been convicted because she did not know this was wrong, if indeed this is the argument she attempts to make.  The court cannot and will not speculate about the arguments defendant seeks to raise absent any more detail.

The defendant also contends that a language barrier may have contributed to the alleged involuntariness of her plea. Her claim of a language barrier is totally contradicted by the record.  The undersigned has no independent recollection of any problems with the defendant's understanding of the English language or any concerns about this at either her initial appearance or at her rearraignment.  During her initial appearance, defendant was asked by AUSA Goldberg whether she read, wrote and understood the English language as he spoke it in court that day, and she responded that she did.[1]  The record reflects that her answers to the court's questions at the rearraignment proceeding were appropriate, and that when she did not understand the court's questions about her satisfaction with counsel,  she said so. (Doc. 43 at 12-13).  There is other evidence of defendant's linguistic ability in the record.  Defendant's counsel, Thomas Keith, submitted an affidavit in which he stated that the defendant appeared to speak and understand English very well, and noted that no interpreter was requested or used either in or out of court. (Doc. 48, exh. 5). Trooper Davis's report reflected that defendant spoke "good English."  (Doc. 48, exh. 1). Defendant submitted a letter to the district court before sentencing from Diane Campbell, a Pensacola Junior College Instructor and the primary GED instructor at the Escambia County Jail.  (Doc. 48, exh. 3).  Ms. Campbell's letter to Judge Rodgers on defendant's

---

[1]The court has reviewed the recording of the defendant's initial arraignment for purposes of this recommendation.

behalf noted that the defendant had been diligent in her pursuit of a GED, and had vastly increased her test scores during her incarceration such that Ms. Campbell had little doubt that defendant would succeed.[2]  Finally, the defendant herself wrote a letter to the court before sentencing which demonstrated an admirable grasp of the English language.  (Doc. 48, exh. 4).  Her assertions of a "language barrier" are thus unsupported, and do not render her guilty plea involuntary.

As part of this claim, she states that her rights were violated when "all relevant information was not considered at the sentencing hearing."  She does not explain what other information should have been brought to the court's attention by counsel or, if something was omitted, why she did not mention it during her own statement to the court. Thus, she has not shown entitlement to relief.

Defendant also maintains that counsel was constitutionally ineffective because he allowed her to enter an invalid guilty plea.  She does not state the basis for her belief that her guilty plea was involuntary, and again the record contradicts her claim.  To make certain that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and must "specifically address three core principles, ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).   The record clearly reflects that this was done in this case. Defendant was placed under oath at her rearraignment proceeding on March 2, 2006 (doc. 43 at 2).  The undersigned explained the defendant's rights to her as follows:

> All right. Before I consider your plea, I need to advise you, again, of what your rights are, based on the not guilty plea that you've previously entered. You are entitled to a jury trial. At the trial, the government will be required to prove your guilt beyond a reasonable doubt, which means that if they can't prove your guilt, the jury would find you not guilty. You're entitled to present evidence of your own. That is, if you have witnesses or documents or something that you think would be of benefit to you in a defense, then your attorney can present them to the jury and the Court. And if those persons are

---

[2]At sentencing, counsel informed the court that defendant had indeed passed the test and had her GED.  (Doc. 44 at 9).

not willing to come forward willingly or produce the documents, they can be subpoenaed and be required to come to court.

You can confront the witnesses against you, which is a constitutional right, which basically means the government has to put live witnesses on the witness stand to testify about what happened, and your attorney can cross-examine those witnesses to try to cast doubt on the credibility or their version, as the case may be.

You have the right to remain silent and not testify at the trial and if you don't testify, the fact of your not testifying will not be held against you. You also have the right to testify if you want, and that's a decision that you would make after consulting with your attorney, but if you testify, you would sit in the witness stand and tell the jury your version of the events, recognizing that you could then be cross-examined just as any other witness can be cross examined.

You, of course, have the right to be represented by counsel at all stages of the trial from beginning to end, but if you change your plea and plead guilty, there won't be a trial.  The government doesn't have to prove your guilt beyond a reasonable doubt. You waive your right to remain silent, at least with respect to the facts of this case. You won't be represented by your attorney at trial. Your attorney will simply represent you here today at the plea and then subsequently at the sentencing when you're sentenced. Do you understand all that?

(Doc. 43 at 4-5).  Defendant indicated that she did.  The court asked whether defendant understood the difference between a guilty and a not guilty plea, which she indicated she did.  (Doc. 43 at 5).  Defendant stated that she understood that she was waiving any potential defenses by entering a guilty plea.  (*Id.*).  She then affirmed that she understood that a guilty plea meant, in essence, that she was convicting herself, and that while she could appeal her sentence, she could not appeal her conviction.  (*Id.* at 5-6).  The government then explained the charges against the defendant and the potential sentence she faced, including the fact that there was a minimum mandatory for both counts of ten years imprisonment.  (*Id.* at 6-7).  The defendant indicated she understood the potential sentence she faced, that it had been explained by counsel, and that there was the possibility that the sentence on the two charges could run consecutively, rather than concurrently.  (*Id.* at 7-8).  She also stated that the sentencing guidelines and how they

applied in her case had been explained to her, and that the sentence would be left entirely to the discretion of the district court.  (*Id.* at 8-10).

The government explained the factual basis for the charges against the defendant, and defendant admitted that those facts were true.[3]  (*Id.* at 10-11).  She acknowledged her signature on the plea agreement, and that she had gone over it with counsel and understood it.  (*Id.* at 14-15).  She stated that no promises had been made to her other than what the court had gone over with her.[4]  (*Id.* at 15).  She also acknowledged that she understood that her conviction could adversely affect her immigration status in that it could lead to her deportation.  (*Id.* at 15).  She responded in the negative when asked whether anyone had forced or threatened or intimidated her in any way to induce her to plead guilty.  (*Id.* at 17).

The court informed the defendant that if her plea were accepted, it would be too late to change her mind at the time of sentencing, and that she could not withdraw her plea if her sentence was not as she had hoped.  (Doc. 43 at 17).  She indicated that she understood.  The court found:

> the defendant is alert and intelligent and understands the nature of the charges and the possible penalties and consequences of a plea.  I find that the facts that the government is prepared to prove are sufficient to support a conviction and, therefore, a plea.  I find that the defendant is fully aware of the possible sentences and the applicability of the sentencing guidelines and that her decision to plea is made freely, voluntarily and knowingly with the assistance of counsel with whom she is satisfied.

(Doc. 43 at 18).

Defendant has not suggested any legal deficiency in the plea proceeding, or the reason that the guilty plea was valid.  As the above demonstrates, the court engaged the defendant in a thorough plea colloquy.  A defendant's statements during a Rule 11

---

[3]The defendant responded in the affirmative to the court's question about whether she was driving a car in possession of something more than 6 kilograms of cocaine, when actually she was a passenger, as stated by the government.  (Doc. 43 at 11).

[4]Contrary to her sworn statement at rearraignment, defendant now contends in her motion that she entered a guilty plea with the understanding that one of the charges would be dropped.  (Doc. 41 at 11).

colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States,* 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629. They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id.; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States,* 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson,* 595 F.2d 1021 (5th Cir. 1979)); *Nguyen v. United States,* 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino,* 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Mims,* 928 F.2d 310, 313 (9th Cir. 1991); *United States v. DeFusco,* 949 F.2d 114, 119 (4th Cir. 1991). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer,* 785 F.2d 1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett,* 514 F.2d 1241, 1243 (5th Cir. 1975)).

Defendant contends that she did not raise this claim earlier because she "was not aware she could have withdrew (sic) her plea agreement." The Federal Rules of Criminal Procedure provide that after the district court has accepted a guilty plea, but before sentencing, a defendant may withdraw the plea if he can establish "a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B); *United States v. Brehm,* 442 F.3d 1291, 1298 (11th Cir. 2006). The provisions of this rule "should be liberally construed." *United States v. McCarty,* 99 F.3d 383, 385 (11th Cir. 1996). However, "[t]here is no absolute right to withdraw a guilty plea." *United States v. Medlock,* 12 F.3d 185, 187 (11th Cir. 1994). "The good faith, credibility and weight of a defendant's assertions in support of a motion [to withdraw] are issues for the trial court to decide." *United States v. Buckles,* 843 F.2d 469, 472 (11th Cir. 1988). Defendant has not presented any evidence or argument that any of her sworn statements during the plea colloquy were false, that her plea was

involuntary in any way, or that there existed either prior to sentencing or now, a "fair and just reason" for allowing the defendant to withdraw her plea.

Defendant's final ground for relief concerns an alleged error in the Statement of Reasons. (Doc. 38). In section IV of the statement of reasons, pertaining to the advisory guideline sentencing determination, the court has checked box "A," which indicates that "the sentence is within an advisory guideline range that is not greater than 24 months and the court finds no reason to depart." Defendant's assertion of error is misguided. The advisory guidelines range was from 70 to 87 months, which is "not greater than 24 months." Defendant's sentence of 70 months was at the bottom of this guideline range, and therefore the correct box was checked and there was no error.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 41) be DENIED.

At Pensacola, Florida, this 8th day of August, 2007.

s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

### <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof. **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>** A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).